IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Stivala Investments, Inc. | : | |
| | : | Chapter Eleven |
| Debtor | : | Case No. 5-08-bk-50803 RNO |
| | : | |
| Stivala Investments, Inc. | : | |
| | : | Adv. No. 5-08-ap-50082 RNO |
| Plaintiff | : | |
| | : | |
| v. | : | **{Nature of Proceeding:** Motion to Dismiss |
| | : | Complaint Pursuant to FRBP 7012(b)(1) & |
| Atlantic National Trust, LLC | : | (6)**}** |
| | : | |
| Defendant | : | |

# <u>Opinion</u>[1]

**Introduction**

     Presently pending before the Court is Atlantic National Trust, LLC's Motion to Dismiss the Debtor's Complaint Pursuant to Federal Rule of Bankruptcy Procedure 7012(b)(1) and (b)(6). The Motion alleges the Complaint seeks relief in a matter in which this Court lacks subject matter jurisdiction under the Rooker-Feldman Doctrine. Alternatively, the Motion alleges that the Debtor has failed to allege a cause of action upon which relief can be granted. The Debtor contends the Complaint does not violate the Rooker-Feldman Doctrine and that a viable claim has been stated. For the reasons stated herein the Defendant's Motion to Dismiss for Failure to State a Claim will be granted.

**Facts**

     Stivala Investments, Inc. originally executed a promissory note to Pioneer Bank for the principal amount of $550,000.00 on October 14, 1994. On January 22, 2003, judgment on the note was confessed against the Debtor in Lackawanna County, Pennsylvania. Subsequently, on March 28, 2003, Pioneer Bank was succeeded by Pennstar Bank. On March 31, 2003, the note was assigned by Pennstar Bank to Atlantic Financial. On August 17, 2005, a second confession

---

[1]Drafted with the assistance of Kathryn F. Evans, Law Clerk.

of judgment was entered against the Debtor. On September 13, 2005, the Debtor moved to strike the second confession of judgment on two grounds; first, that the Plaintiff's Complaint contained a material defect under Pa. R. Civ. P. 2952(a)(5) in that it did not include a statement that a confessed judgment was previously entered; and, second, that once the Plaintiff employed the warrant of attorney under the promissory note, it exhausted its authority and could not exercise that power again in a second judgment. Def's Mot. to Dismiss Adv. Proceeding, Ex. 5, p. 5. The petition was denied on March 8, 2006, by the Lackawanna Court of Common Pleas. On March 17, 2006, the Debtor appealed that Order, and on April 9, 2007, the Pennsylvania Superior Court affirmed the lower court's ruling. The Debtor then filed a petition for allocator with the Pennsylvania Supreme Court; the petition was denied on November 14, 2007.

The Debtor filed for chapter 11 relief on March 24, 2008. The Debtor next commenced an adversary proceeding against Atlantic National Trust, LLC to determine the validity and extent of Atlantic Financial's interest in property of the estate. Principally, the Complaint sought to reduce the judgment of Atlantic Financial on grounds that the amount of the judgment is improper. The Complaint contends the interest rate used to calculate the claim between January 22, 2003 and August 17, 2005 was improper. It also challenges the $70,931.35 portion of the claim seeking attorney's fees; and, finally, asserts the amount of the judgment is overstated because the Debtor was not credited for payments totaling $166,001.83 to Defendant's predecessor, Pennstar Bank.

**Analysis**

**I. Rooker-Feldman Doctrine**

The Rooker-Feldman Doctrine is a doctrine that prohibits an inferior federal court from effectively sitting as a court of appeals for state court judgments. The Rooker-Feldman Doctrine has a statutory basis in 28 U.S.C. § 1257. *Gary v. Braddock Cemetery,* 517 F.3d 195 (3d Cir. 2008). The statute provides in part:

> (a) Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the *Supreme Court* by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is

> specially set up or claimed under the Constitution or treaties or
> statutes of, or any commission held or authority exercised under,
> the United States.  28 U.S.C. § 1257(a) (emphasis added).

Thus, Congress has exclusively vested the United States Supreme Court with the authority to review state court judgments.  Review by inferior federal courts, such as the District Court or Bankruptcy Court, is not permitted.  *In re Knapper,* 407 F.3d 573, 580 (3d Cir. 2005); *In re Wilson,* 116 F.3d 87, 90 (3d Cir. 1997).  There is a two-part test to determine whether the Rooker-Feldman Doctrine applies.

> [A] claim is barred by Rooker-Feldman under two circumstances;
> first, if the federal claim was actually litigated in state court prior
> to the filing of the federal action or, second, if the federal claim is
> inextricably intertwined with the state adjudication, meaning that
> federal relief can only be predicated upon a conviction that the
> state court was wrong.  In either case, Rooker-Feldman bars a
> litigant's federal claims and divests the District Court of subject
> matter jurisdiction over those claims.  *In re Randall*, 358 B.R. 145,
> 154 (Bankr. E.D.Pa. 2006): citing *Knapper,* 407 F.3d at 580.

The questions for this case are: were the alleged $166,001.83 failed credit, the Defendant's entitlement to $70,931.35 in attorney's fees, or the interest rate of the judgment actually adjudicated during the state court litigation?  Or, are those issues inextricably intertwined with the state court action such that a ruling by this Court would undermine the holding of the state court?

**1) Actually Litigated**

For a claim to have been "actually litigated" it "requires that the state court has considered and decided precisely the same claim that the plaintiff has presented in the federal court."  *In re Randall,* 358 BR at 154 citing *ITT Corp. v. Intelnet International Corp.,* 366 F.3d 205, 211, n. 8 (3d Cir. 2004).  Here, it does not appear that the state court addressed the propriety of the judgment amount in its decision, therefore, I find it was not actually litigated in state court.

**2) Inextricably Intertwined**

The second way a claim may be barred under the Rooker-Feldman Doctrine is if the claim was inextricably intertwined.  A claim will be inextricably intertwined "(1) 'when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered' [or] (2) when 'the federal court must . . . take action that

-3-

Case 5:08-ap-50082-RNO    Doc 11    Filed 07/17/08    Entered 07/17/08 10:35:44    Desc
Main Document      Page 3 of 5

would render [the state court's] judgment ineffectual." *ITT Corp.*, 366 F.3d at 211 (internal citations omitted). The Third Circuit in *Desi's Pizza, Inc. v. City of Wilkes Barre* further elaborated on these two concepts. 321 F.3d 411, 421 (3d Cir. 2003).

With regard to the first issue, the Circuit explained "[i]n determining whether a federal decision favorable to the plaintiffs would mean that a prior state-court judgment was wrong, it is necessary to identify the pillars on which the state-court judgment rests. To do this, we consider the questions of state law that the state court was obligated to reach in order to render its decision." *Id.* at 421. Here, the pillars of the state court decision rest on issues of due process and procedure, not upon a calculation of damages, making this prong inapplicable to the situation herein. As such, we turn to the final consideration of whether a victory by the Debtor in this Court would render the prior judgment ineffectual.

The key consideration is that the federal court not allow a plaintiff to "undo or prevent the enforcement of a state court's order ." *Id.* at 422. To determine whether a victory herein would undermine a state court order, we must examine closely the relief sought in the Complaint. The Complaint's prayer reads as follows:

> WHEREFORE, the Plaintiff/Debtor prays that this Honorable Court determine the extent of Defendant/Creditor's asserted lien against its property and in the process determine the amount of the Defendant/Creditor's secured claim. To the extent that the secured party's claim is less than being asserted, the Plaintiff/Debtor prays that this Court will determine the extent this claim and avoid any portion thereof deemed unsecured pursuant to 11 U.S.C. § 506(d) and for other and further relief as the Court deems just and proper.

If the Debtor were ultimately successful herein, it would seriously undermine the Defendant's ability to execute on the final judgment of the state court which awarded it $550,048.11, with interest through July 8, 2005, and an attorney's commission as authorized by the warrant of attorney in the promissory note.

Additionally, the Court finds it of great import that the arguments raised by the Debtor herein could not be raised in any subsequent state court proceeding. Namely, under applicable Pennsylvania law, the Debtor would be precluded from challenging the amount of the judgment because the Debtor waived those arguments by failing to raise them in the initial motion to open/strike the judgment. Pa. R. Civ. P. 2959(a) & (c) (All grounds to open or strike a judgment

-4-

must be asserted in a single petition, and any defenses and objections which are not included in the petition and answer are waived); *see also, Davis v. Woxall Hotel, Inc.*, 395 Pa.Super. 465, 577 A.2d 636, 693 (1990) (defenses to a confessed judgment not contained in the petition to open or strike judgment are waived); *Romah v. Romah*, 411 Pa.Super. 12, 600 A.2d 978, 981 (1991) (holding that the defendant could not seek relief from unreasonable attorney's fees when the issue was not raised in a petition to open or strike the confession of judgment); and *Duque v. D'Angelis,* 390 Pa.Super. 136, 139, 568 A.2d 231, 233 (1990) (failure to contest the amount of the judgment in a petition to strike and/or open a confessed judgment is waived).

In sum, I find that because no Pennsylvania court would be permitted to reduce the judgment given the procedural waiver of defenses, a lower federal court should respect that result. I find the Debtor's inability to raise an issue in subsequent state court proceedings sufficient to preclude me from disturbing the state court's original monetary award. Furthermore, to reduce the judgment would clearly inhibit the Creditor/Defendant's ability to enforce its rights under the state court judgment. As such, I find that because any potential finding in favor of the Debtor would undermine a final state court judgment, the amount of the monetary award is inextricably intertwined with the state court judgment and review of this issue is precluded under the Rooker-Feldman Doctrine.

An Order will be entered consistent with this Opinion.

Date: July 17, 2008

_____
Robert N. Opel, II, Bankruptcy Judge (BI)
*This opinion is electronically signed and filed on the same date.*